## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID STEKETEE, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VIRIDIAN ENERGY, INC., <br><br> Defendant. | **No. 3:15-cv-00585** <br><br><br> **AMENDED CLASS ACTION COMPLAINT** |

1.     Plaintiff David Steketee ("Plaintiff"), on behalf of himself and all persons similarly situated, by and through his attorneys, alleges as follows.

## INTRODUCTION

2.     Plaintiff David Steketee brings this action on behalf of himself and a class of all similarly situated New Jersey consumers against Defendant Viridian Energy, Inc. ("Viridian"), arising out of Viridian's unfair, deceptive, unconscionable and bad faith billing for "supplying" electricity to residential consumers.

3.     Viridian entices residential customers to sign up for its service by offering low initial rates for electricity.  When the "teaser rate" period expires, however, customers are rolled over into a month-to-month variable rate plan with exorbitant rates.

4.     Viridian represents in its marketing materials and in its contracts that it offers a "variable rate" electricity plan to residential consumers that is tied to market conditions.  However, contrary to Viridian's representations and obligations, Viridian consistently and improperly charges an extraordinarily high premium rate for electricity *regardless* of fluctuations in the underlying market conditions.  Indeed, as set forth below, Viridian routinely charges its consumers

rates that are *four or even five times* the underlying market rate, notwithstanding Viridian's representations that its variable rates "reflect" monthly market conditions.

5. In particular, Viridian's rates go *up* to match spikes in the underlying market price. However, when the market price goes *down*, Viridian's rate remains at an inflated level several times higher than the market rate.  Through this scheme, Viridian subjects consumers to consistent and unlawful "heads I win, tails you lose" pricing.

6. This unfair and deceptive scheme of charging inflated electric prices that match *increases* in the underlying market price while failing to pass-along *decreases* is intentionally designed to maximize revenue for Viridian.

7. Plaintiff and other Viridian customers have been injured by Viridian's unlawful practices.  Accordingly, Plaintiff, on behalf of himself and the class, seeks damages, restitution and injunctive relief for Viridian's violation of state consumer protection statutes (Count I) and breach of the implied covenant of good faith and fair dealing (Count II).

## PARTIES

8. Plaintiff David Steketee is a resident of Morristown, New Jersey.

9. Defendant Viridian Energy, Inc. is a corporation organized under the laws of Nevada whose principal place of business is located at 1055 Washington St., Stamford, CT 06901.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000 and there are members of the Class who are citizens of a different state than Defendant Viridian.

11.     This Court has personal jurisdiction over Viridian because Viridian maintains an office in Connecticut and because Viridian has tens of thousands of customers in Connecticut and there by conducts business in this state.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Viridian resides in Stamford, Connecticut.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A.     Energy Deregulation and the Role of Electric Suppliers**

13.     In the late 90s and early 2000s, many states moved to deregulate at least part of the electricity supply services then performed by large public utilities.  Delivery of electricity to a consumer requires both the creation of electricity and the transmission of that electricity from the power plant to the consumer. The typical pattern was to require the public utilities to divest their power generation assets such as coal, gas and nuclear power plants.  But, the regulated utilities continued distributing power from these power plants to consumers through transmission lines.

14.     When deregulation occurred, the business of power *supply* was opened to competition and consumers were allowed to select the companies from whom they would purchase their power.

15.     As a result of the deregulation of power supply, several different parties are now involved in the supply of electric power to residential consumers.  Certain companies, such as Dominion, produce electric power ("Generation Companies"). Other companies, such as Jersey Central Power and Light ("JCP&L") in New Jersey, distribute electricity from Generation Companies to the end user ("Distribution Companies").  Although some Generation Companies have sold power directly to consumers, including residential customers, most sell the power on the wholesale market to companies that market to retail customers ("Electric Suppliers").

16.     The market for wholesale power in the New Jersey is under the administration of an independent, not-for-profit corporation formed in accordance with the recommendations of the Federal Energy Regulatory Commission, called PJM Interconnection LLC ("PJM"). PJM coordinates and directs the generation and flow of electricity throughout the region, ensuring that electric supply exactly meets demand throughout the network. The wholesale market managed by PJM determines where and when electricity will be made by Generation Companies and the wholesale prices that will be paid for that electricity through competitive bids.  The bid process determines the Generation Company that will make each unit of electricity and the wholesale price each Energy Supplier will pay to each Generator for each unit of energy delivered to specific locations throughout the region.

17.     Electric Suppliers play a middleman role:  they purchase power directly or indirectly from Generation Companies and sell that electricity to end-user consumers.  However, Electric Suppliers do not **deliver** that electricity to consumers.  Rather, Generation Companies deliver the electricity to Distribution Companies, which in turn deliver the electricity to the ultimate consumer.  Electric Suppliers merely buy electricity at the wholesale rate and then sell that power to end-users with a mark-up. Thus, Electric Suppliers are essentially brokers and traders: they neither make nor deliver electricity, but merely buy electricity from the Generation Companies and re-sell it to end users.

18.     Like other Electric Suppliers, Viridian purchases power on the wholesale market and sells it to consumers.

19.      Viridian's prices are not approved by states' regulatory authorities. Rather, Viridian and other Electric Suppliers are free to set their own rates for supplying electricity to consumers.  And Viridian, like all other suppliers, relies upon the Distribution Companies to

deliver the electricity it purchases on the wholesale market to its customers.  The Distribution Companies charge separately for their services, using rates that are reviewed and approved by the states' regulatory agencies.

20.     Electric Suppliers may contract with consumers to supply electricity on either a "Fixed" or "Variable" rate basis.  Under a Fixed contract, the Supplier agrees to supply electricity at a set rate for a certain number of months.

21.     Under a Variable rate contract, the Supplier may vary the rate it charges on a periodic basis (often monthly).

**B.     Viridian's Excessive Rates**

22.     Viridian has offered various Fixed and Variable rate plans, including contracts that charge a low promotional "teaser" rate which is fixed for a set number of months before automatically rolling into a Variable rate plan.

23.     Viridian represents that its Variable rate plan is based upon market conditions. Indeed, that is the entire hook by which Viridian attracts consumers to Variable rate plans.

24.     Plaintiff was solicited by a phone representative of Defendant to switch to Defendant as a provider of electric power. [1] During that phone call, Defendant represented that Plaintiff's variable rate would be based on market conditions. Because Plaintiff believed that wholesale electricity prices would fall, Plaintiff switched to Defendant as his power source.

25.     Viridian's Variable rate "Terms of Service" make this express link between the Variable rate charged by the company and the underlying market conditions, stating the variable rate will vary "based on several factors, including but not limited to market conditions, operations

---

[1] Defendant is required to obtain a written or electronic signature or audio recording demonstrating each consumer's agreement to purchase electricity at the terms alleged above. N.J.S.A 48:3-90.

costs, and other factors and may include an introductory rate for such time as indicated in your Enrollment Documentation ("Variable Rate")."

26.     Accordingly, a reasonable consumer would understand that Viridian's Variable rates fluctuate in a manner correlated with the underlying wholesale market rate, and that, although prices would go up when wholesale prices rose, they would also go down when wholesale prices decreased, enabling consumers to take advantage of market lows.

27.     Instead, and contrary to reasonable consumer expectation, Viridian used its Variable rates as a pure profit center, increasing the rates charged to class members when wholesale prices rose, but staying at a level as much as over ***four or five times*** the wholesale market rates when the wholesale prices fell.

28.     Defendant's variable rates were not based on market conditions. From March to September, 2014, the variable rates Defendant charged Plaintiff rose. During this same time period, wholesale power rates fell over 50%, and the Defendant's premium above the wholesale rate exploded, from 124% in March to 429% in August, 2014.

29.     For example, the chart below sets forth (1) the average wholesale price (in dollars per kilowatt hour) of electricity delivered in PJM's market for each month during the period from March 2014 through October 2014, as reported by PJM; (2) the rates Viridian charged to Plaintiff Steketee for those same months; and (3) the resulting percentage premium that Viridian charged Steketee over the wholesale rate on an average per-month basis:[2]

---

[2] Although Plaintiff does not yet have the PJM prices for the period November 2014 through February 2015, Viridian charged Steketee 17.99 cents for each of those months except November, 2014, when it charged 16.99 cents.

|  | **Mar -14** | **Apr-14** | **May 14** | **Jun-14** | **Jul 14** | **Aug-14** | **Sep-14** | **Oct-14** |
|---|---|---|---|---|---|---|---|---|
| **Average Wholesale** | $0.0765 | $0.047 | $0.044 | $0.044 | $0.038 | $0.034 | $0.036 | $0.037 |
| **Viridian** | 0.1717 | 0.1749 | $0.1749 | $0.1799 | $0.1799 | $0.1799 | $0.1799 | $0.1799 |
| **Viridian Premium *ABOVE* Wholesale Price** | **124%** | **272%** | **298%** | **309%** | **373%** | **429%** | **399%** | **386%** |

30.     There was, accordingly, a huge disparity between the wholesale rates Viridian paid for power and the variable rates that it charged its customers.  By way of comparison, JCP&L's standard offer rates during the same period were 10.5403 cents per kilowatt hour during the winter months and, during the summer months, 9.5755 cents per hour for the first 600 kilowatts used, and 10.5012 cents per kilowatt hour thereafter.  Unlike Viridian's variable rates, the JCP&L rates were fixed and certain – customers knew in advance what they would be, and bore no risk of price increases in the event of a sudden spike in wholesale power costs.  Under these circumstances, it would have been reasonable to expect that Viridian's rates would have been at least competitive, if not lower, than JCP&L's rates during those months when the wholesale price was at its lowest, such as the period from July to August of 2014.  In fact, Viridian's prices were *least* competitive during that period.

31.     Not only were Viridian's variable rates exceptionally high, they were also unaffected by declines in the wholesale price of power.  During the period from March to August of 2014, for example, wholesale prices declined by more than 50 percent – at first sharply, and then more gradually – going from 7.65 cents per kilowatt hour to 3.4 cents per kilowatt hour.  At

the same time, Viridian's variable rates actually *increased*.  This is graphically shown by the following chart, which shows the wholesale price paid by Viridian and the retail price it charged Plaintiff during the period from March 2014 through October 2014:



32.     Accordingly, Viridian routinely charges class members a Variable electric rate that over for or five times the underlying market rate and bears no discernable relationship to market conditions, going up when the market rate is declining sharply.

33.     Notably, Viridian charges these exorbitant premiums without adding any value to the consumer whatsoever.  As detailed above, Viridian does not either produce or transport electricity.  It has no role in running or maintaining power plants or power lines; it does no hook-ups or emergency response.  Indeed, Viridian does not even handle customer billing: that, too, is handled by the Distribution Company.  Essentially, all that Viridian does is act as a trader in the transaction.  Yet it charges several multiples of the amount the Generation Companies receive for making electricity and the Distribution Companies receive for transmitting power, maintaining power lines, and handling emergency services and customer billing and calls.

34.     Moreover, Viridian's costs, other than its wholesale cost of power, were relatively fixed and could not have justified the massive increases alleged above. For example, charges for

ancillary and capacity charges and other regulatory costs did not fluctuate to any material extent and, in particular, did not fluctuate to a material extent in relation to wholesale power prices. Viridian's other material costs were for operations, and included costs, for example, relating to rent, equipment, overhead, employees, etc. were also relatively fixed and could not justify the price variations alleged above.

35.     Accordingly, Viridian's essential representation to consumers concerning its Variable pricing plan – that the Variable rate is based on market conditions – is patently false. Indeed, as alleged above, at one point, Viridian's price was over ***five times*** the wholesale price.

36.     Based on the foregoing, Defendant's Terms and Conditions fail to "conspicuously disclose" the "pricing determinant" as required under N.J.S.A. 48:3-85.

### B. Plaintiff Suffered Injury Due To Viridian's Improper Business Practices

37.     Plaintiff David Steketee was on Viridian's Variable rate plan from March, 2014 to February, 2015**.**

38.     Plaintiff Steketee paid Viridian's exorbitant Variable electricity rates and thereby suffered an ascertainable loss as a result of Viridian's conduct as set forth above. As alleged above, Plaintiff paid Viridian between 17.17 and 17.99 cents per kwh during the period he was a variable rate customer which was far in excess of the amount he should have paid if Viridian's rates were based on market conditions.

### CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure behalf of himself and the following class of similarly situated persons:

> All persons enrolled in a Viridian Energy, Inc., variable rate electric plan in connection with a property located within New Jersey at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of class certification (the "Class").

40.     Plaintiff reserves the right to modify or amend the definition of the proposed Class or to propose sub-classes as might be necessary or appropriate.

41.     Excluded from the Class are Defendant, including any parent, subsidiary, affiliate or person controlled by Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.

42.     The proposed Class and meets all requirements for class certification.  The Class satisfies the numerosity standard.  The Class is believed to number in the tens of thousands of persons.  As a result, joinder of all class members in a single action is not practical.  On information and belief, class members can be identified by Viridian and Distribution Company records.

43.     There are questions of fact and law common to the Class which predominate over any questions affecting only individual members.  The questions of law and fact common to the Class arising from Viridian's actions include, without limitation, whether Viridian:

> a.  committed unfair or deceptive trade practices by its Variable electric rate policies and practices;
>
> b.  breached its covenant of good faith and fair dealing with regard to its Variable electric rate contracts;
>
> c.  was unjustly enriched through its Variable electric rate policies and practices; and
>
> d.  continues to commit wrongdoing through its Variable electric rate policies and practices.

44.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity to other available methods for the fair and efficient adjudication of this controversy.

45.     Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the members of the class he seeks to represent.  The interests of the members of the Class will be fairly and adequately protected by Plaintiff and his undersigned counsel, who have extensive experience prosecuting complex class action litigation.

46.     Plaintiff's claims are typical of the claims of the Class because they arise out of the same conduct, policies, and practices of Viridian with respect to its Variable electric rate policies and practices.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other putative class member.

47.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy.  It would be impracticable and undesirable for each class member who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

48.     Notice can be provided to Class members by using techniques and forms of notice similar to those customarily used in other class actions.

## CLAIMS FOR RELIEF

## COUNT I

### VIOLATION OF CONSUMER FRAUD ACT

49.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

50.     Plaintiff brings this count individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Class.

51.     Viridian is engaged in "trade" and "commerce" as it offers electricity for sale to consumers.

52.     Viridian's conduct as alleged above constitutes an unconscionable and unlawful commercial practice.

53.     Viridian's conduct as alleged above also constitutes a deceptive act or practice. Viridian's Variable electric rate representations as set forth above were and are likely to mislead consumers and Viridian intended that consumers rely upon those representations.  Viridian's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of power from Viridian pursuant to Variable rate contracts.

54.     The foregoing unlawful and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Class to suffer an ascertainable loss and substantial injury when they paid an exorbitant premium for electricity over wholesale market rates.

55.     The foregoing actions constitute unlawful and deceptive practices in violation of N.J.S.A. 56:8-2.

56.     Plaintiff and the Class are entitled to recover damages and other appropriate relief, as alleged below, under N.J.S.A. 56:8-19.

## COUNT II

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

57.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

58.   All contracts contain an implied covenant of good faith and fair dealing, including Plaintiff's and Class members' contracts with Viridian.

59.   Viridian's Terms of Service with customers gives Viridian discretion concerning the monthly rates charged under Variable rate contracts and any increases or decreases to the rate to reflect the changes in market conditions.

60.   As alleged herein, Viridian has used its discretion to bill exorbitant rates that are not tied to market conditions and to ***increase*** the monthly Variable rate when wholesale markets rise, but not to commensurately ***decrease*** the monthly Variable rate when wholesale markets fall. As a result, consumers are billed exorbitant electric rates several multiples of the wholesale market rate.

61.   Viridian's performance of its discretionary functions under the Terms of Service as alleged herein to maximize its revenue from Variable electric rates impedes the right of Plaintiff and other Class Members to receive benefits that they reasonably expected to receive under the contract.

62.   On information and belief, Viridian's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Viridian's revenue at the expense of its customers and in contravention of their reasonable expectations as customers of Viridian.

63.   Viridian has breached the covenant of good faith and fair dealing in the Terms of Service through its Variable electric rate policies and practices as alleged herein.

64.   Plaintiff and members of the putative Class have sustained damages as a result of Viridian's breaches as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the putative Class, requests that this Court enter judgment against Defendant and in favor of Plaintiff and award the following relief:

(a)    Certification of the proposed Class;

(b)    Injunctive relief enjoining Viridian from charging exorbitant Variable electric rates under their current policies and from engaging in the wrongful, deceptive, unfair, and unconscionable practices alleged herein;

(c)    Damages in an amount to be determined at trial, including actual, statutory and punitive damages;

(d)    A declaration that Defendant's actions as alleged herein are unlawful;

(e)    Disgorgement and restitution of all exorbitant rates paid to Viridian by Plaintiff and the putative Class as a result of the wrongs alleged herein;

(f)    Pre- and post- judgment interest at the maximum rate permitted by applicable law;

(g)    Attorneys' fees, costs, and expenses as available under the law.

(h)    Such other and additional relief as the Court may find just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: September 15, 2015

PLAINTIFF

   /s/ Robert A. Izard
By: Robert A. Izard (ct01601)
    Seth R. Klein (ct18121)
    Nicole A. Veno (ct29373)
    Izard Nobel LLP
    29 South Main Street, Suite 305
    West Hartford, CT  06107
    (860) 493-6292

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 15th day of September, 2015, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document though the court's CM/ECF system.


<u>/s/ Seth R. Klein</u>
Seth R. Klein